## 61110. WISECUP v. THE STATE.

BIRDSONG, Judge.

Jo Nell Wisecup was indicted for the murder of her husband, convicted of voluntary manslaughter and sentenced to twelve years, with eight to serve and four on probation. She brings this appeal enumerating six alleged errors.

The underlying facts of this unfortunate homicide are not in dispute; only Ms. Wisecup's state of mind at the time of the shooting and whether the shooting was deliberate or accidental were in sharp dispute. There are no eyewitnesses other than the appellant. Ms. Wisecup presented evidence that she was often the victim of sharp arguments with her husband and on this occasion he assaulted her with a .38 caliber pistol. During the struggle to keep the weapon pointed away from her body, the gun accidentally discharged, the bullet passed through her husband's body severing major arteries, and he died before she could staunch the flow of blood or obtain emergency help. *Held:*

On the opposite side, the state's evidence presented a picture of a turbulent marriage, vociferous arguments in which both spouses inflicted injury on each other, threats to kill her husband by Ms. Wisecup and serious inquiries by her to a third party as to how a person could kill another without risk of detection. The state's evidence as to the circumstances surrounding the homicide scientifically showed a shooting in which Ms. Wisecup, rather than struggling with her husband while he held the gun, held the gun several feet from his body and fired the weapon while pointing it at him in a plane horizontal to the floor, some four feet above the floor, i.e., in a manner in which a pistol is usually held when pointing and firing it.

1. In her fifth enumeration of error, Ms. Wisecup argues that the trial court erred in failing to grant a directed verdict of acquittal. Only where there is no conflict in the evidence and a verdict of acquittal is demanded as a matter of law is it error for the trial court to refuse to direct a verdict of acquittal. *Merino v. State,* 230 Ga. 604 (198 SE2d 311); *Allen v. State,* 137 Ga. App. 302, 303 (223 SE2d 495).

Like the trial court, we cannot say there was no substantial evidence supporting the theories advanced by the state. The trial court did not err in denying this motion. *Bethay v. State,* 235 Ga. 371 (219 SE2d 743). See *Hearn v. State,* 145 Ga. App. 469, 470 (243 SE2d 728).

2. Enumeration 4 complains that the trial court erred by failing to suppress an oral statement made by Ms. Wisecup to an investigator almost immediately after the shooting as well as a taped statement made several days later. The ground for the suppression was that Ms. Wisecup was so distraught that she could not have any reasonable understanding of her Miranda rights nor could she intelligently give a voluntary statement and that any subsequent statement was thereby infected.

The evidence as to the disruptiveness of Ms. Wisecup's emotional condition was in dispute. The interrogating officer testified that though she was hysterical and weeping at times, when he took the statement she was able to communicate her thoughts and indicated that she fully understood her rights. Thus the trial court was presented with a factual dispute as to the admissibility of the statements. Factual and credibility determinations pertaining to the voluntariness made by a trial judge after a suppression hearing must be accepted by appellate courts unless such determinations are clearly erroneous. *Johnson v. State,* 233 Ga. 58 (209 SE2d 629); *Gamarra v. State,* 142 Ga. App. 196, 197 (1) (235 SE2d 652). We cannot say that the trial court's determination in this regard was clearly erroneous. Moreover, assuming arguendo that the Miranda warnings were insufficient, no harmful error appears because the appellant subsequently testified to facts which were in substance the same as that to which the objection was made. *Lindsey v. State,* 138 Ga. App. 377, 378 (226 SE2d 473).

3. In enumerations of error 1, 2, and 3, appellant contends that the trial court erred in its charge upon justification; its charge on the theory of accident and burden of proof pertaining thereto; and its charge on bias as a method of impeachment.

Appellant presented to this court extensive arguments that there was no evidence that Ms. Wisecup may have provoked the incident or was the aggressor, so as to preclude the defense of justification. The portion of the trial court's charge in this regard is lifted from its context and standing alone is criticized. However, we will examine the charge as a whole, and not just from the viewpoint of the defendant. There was evidence which tended to show Ms. Wisecup had previously engaged in violence as well as the deceased, that she had threatened to kill her husband on several occasions, and the evidence was consistent with a shooting that indicated deliberateness. Thus, the conclusion is not without foundation that

Ms. Wisecup could have provoked an encounter and, without the risk of contradiction by an eyewitness, thereby committed that "faultless," or justifiable homicide she allegedly had discussed earlier with a friend.

We have considered the charges on justification, accident, and impeachment within the context of the factual setting and the charge as a whole. We are satisfied that the specific portions of the charge of which complaint is made when torn asunder and considered as disjointed fragments may be subject to the objections made, but when put together and considered as a whole, the entire charge is perfectly sound. *Merritt v. State,* 110 Ga. App. 150, 153 (137 SE2d 917).

4. In her last enumeration of error, appellant argues that the trial court erred in allowing, in rebuttal, hearsay testimony of two witnesses who disputed the testimony of appellant's mother (but not the appellant directly). Moments before the shooting occurred, a telephone call was made from the kitchen where the homicide occurred to appellant's mother. Appellant testified that she entered the kitchen and found her husband on the phone. When she asked him to whom he was talking, he allegedly answered that he was talking to her mother. She remonstrated that her mother should not be brought into their argument, and he hung up. Ms. Wisecup thus impliedly denied that she talked to her mother. The mother testified that she was called by her son-in-law who cryptically announced that his wife was not going to leave him and hung up without more. The mother denied that she spoke to her daughter. In rebuttal the state presented evidence that the morning following the shooting the mother called one of the rebuttal witnesses and related during the conversation that her daughter had called her and that her son-in-law apparently grabbed the phone and said not to worry, that he (the son-in-law) was leaving. A second call to the other rebuttal witness the next day repeated the same conversation. Appellant's mother denied talking at all with the first rebuttal witness.

Appellant complains that the evidence was inadmissible and prejudicial as being hearsay. We disagree. The evidence was admissible as tending to impeach the testimony of both appellant and her mother. Moreover, the materiality and impeachment value of the testimony was shown by the connection between whether appellant was leaving or her husband was leaving where there was other competent testimony that she would kill her husband before she would let him leave her. There was no error in allowing these witnesses to testify. See Harris v. New York, 401 U. S. 222 (91 SC 643, 28 LE2d 1); Oregon v. Hass, 420 U. S. 714 (95 SC 1215, 43 LE2d 570); *Bradley v. State,* 137 Ga. App. 670, 672 (224 SE2d 778).

5. This court is in receipt of a brief by Amicus Curiae. That brief reemphasizes the assertedly erroneous charges of the court in particular and the remaining enumerations with less emphasis. The thrust of the amicus brief is that the appellant is a battered wife and because of such, each of the charges to which objection has been made takes on added prejudice. This added prejudice is assertedly hidden by the refusal of the community and its individual members to acknowledge the antagonism and prejudice which rises whenever serious inquiry is made into the domestic arena of the husband-wife relationship. It is contended that when a battered wife situation is shown, this tends to shift the burden to the wife to show that her husband's death was precipitated by his threatening behavior. This allegedly is so because of the presupposed cultural requirement of our society that a wife must be submissive to her husband, and not "make waves."

We find this argument to be speculative and conjectural. Appellant did not offer the battered wife history as contributing to her defense. She defended on the basis that as of the day and time of the incident, she was justified in her behavior either as an accident or that she was simply defending herself. We are satisfied that the discussion contained in the several divisions of this opinion hereinabove adequately refute any allegations of error as enhanced by a battered-wife-syndrome argument, or otherwise, made in the amicus brief.

*Judgment affirmed. Shulman, P. J., and Sognier, J., concur.*

DECIDED FEBRUARY 19, 1981 —
REHEARING DENIED MARCH 11, 1981 —

*Tony L. Axam,* for appellant.
*Stephen Pace, District Attorney, James E. Hardy, Assistant District Attorney,* for appellee.
*Aleta Clayton,* amicus curiae.

